We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Anne B. Jorgensen presiding. Your Honors, the first case on the docket this morning is 2-22-0234 LM Insurance Corporation and Liberty Joint Corporation plaintiff appellees, the City of Sycamore, Illinois, and Jennifer Campbell and Jeremy Pennington individually and on behalf of all others similarly situated defendants. City of Sycamore Defendant Appellant. Arguing for the appellant, Mr. Paul Walker-Bright. Arguing for the appellee, Mr. Matthew Sitzer.  Yes, Your Honor. Okay, then proceed when you're ready. Thank you. Good morning, Your Honors. May it please the Court. My name is Paul Walker-Bright and I represent the appellant of the City of Sycamore. As a short fact update, since the briefs were filed in this case, the Campbell lawsuit has been settled. The City of Sycamore paid $6,000 to each of the two named plaintiffs, so $12,000 in total. But that's the only monetary component of the settlement. So that case has been resolved and this appeal only involves Liberty's duty to defend the city in the Campbell lawsuit. The complaint in that case alleged that the city negligently failed to maintain its water mains. The water mains allegedly deteriorated over time, which allegedly deposited iron particulates into the water inside of the pipes. These iron particulates allegedly had three separate effects, all of which allegedly happened inside of the pipes and inside of people's homes. The first effect is that iron and other sediments allegedly caused property damage. They stained personal property and damaged appliances. The second effect is that the iron allegedly combined with chlorine used to treat the water, which allegedly created conditions conducive to bacterial growth. The water with the bacteria allegedly had unpleasant odor that lingered in clothes and dinnerware and showers, and it allegedly created a risk of waterborne illnesses. The third effect is that the iron allegedly interfered with the orthophosphate treatment of the water, which allegedly allowed lead and other metals to get into the water inside of the pipes. The lead allegedly came from service lines, joints, solder, plumbing, parts of the water system itself. Some residents allegedly reported high levels of lead in their water, and some residents allegedly developed health issues consistent with lead toxicity. Now, Liberty refused to defend the city in the Campbell complaint for three reasons. First, the pollution exclusion, and then a lead exclusion, and then the supposed lack of an occurrence alleged in the Campbell complaint. The Toronto court correctly found that the Campbell complaint alleged a potential occurrence, but incorrectly found that the two exclusions applied. So if we look at the exclusions first, and starting with the pollution exclusion, the Illinois Supreme Court in the Collins case found that pollution exclusions only apply to traditional environmental pollution. And it went on to state that the discharge, dispersal, release, or escape of a pollutant must be into the environment in order to trigger the pollution exclusion clause. So courts following from Collins have said that traditional environmental pollution means hazardous material discharged into the land, the atmosphere, or any water course or body of water. And based on that interpretation, Illinois courts have consistently found that alleged releases of hazardous substances inside of buildings are not traditional environmental pollution. And courts in other jurisdictions are in accord. Most notably, the Netherlands insurance company, the Butler Area School District case from the Western District of Pennsylvania. That case involved the duty to defend allegations that are strikingly similar to those in the Campbell complaint. The allegations there also were that deteriorating water pipes allowed lead and copper into the water, which then allegedly injured the students who drank it. The court there looked at a pollution exclusion that was identical to the pollution exclusion in the Liberty policies and found that the insurer's duty to defend was not negated by those exclusions. The court said that the exclusion did not apply to a substance such as lead that is a component of a product that degrades over time, rendering the substance incrementally bioavailable. The court also noted that the allegations in the underlying complaint did not definitively establish that there had been a discharge, dispersal, release, or escape of lead. So the Netherlands insurance case and the other pollution exclusion cases that we cited in our briefs, they all stand for the proposition that the introduction of a hazardous substance inside of a closed system or a container, a building, a water system, a fuel oil tank, that is not traditional environmental pollution. The Campbell complaint alleged that the hazardous substances all came from inside the water system. They stayed inside the system until it was released into people's homes. The substances were never in the environment. Aren't they ultimately in the environment once the water passes through a home and back into the water table? That may or may not be the case, but that is not the allegations in the complaint, which is what we have to go on for the duty to defend. And the alleged injuries occurred inside of the homes when the homes were exposed to the water and when the people allegedly drank the water. There was no release of the substances into the environment that allegedly caused the bodily injury or property damage that is at issue in the Campbell case. So the Village of Crestwood cases, which Liberty relies on, the PCE there was discharged from a dry cleaning business into the soil and then into the groundwater. In other words, into the environment. And contaminated groundwater is traditional environmental pollution. So when the village took that water and gave it to its residents, it didn't change the nature of the groundwater contamination. It was still traditional environmental contamination. And so the courts in those cases found that the fact that the village hadn't been the entity that put the PCE into the groundwater was irrelevant. The pollution exclusion doesn't depend on what entity puts the materials into the environment. But that is not the Campbell case. Here, the groundwater used by the City of Sycamore was fine. There are no allegations in the Campbell complaint of any foreign or hazardous substances in the groundwater while it was in or part of the environment. The Campbell complaint does not allege traditional environmental pollution, and therefore the pollution exclusion did not negate Liberty's duty to defend. Now, if we look at the lead exclusion in the Liberty policies, it uses language such as arising from or resulting directly or indirectly from, but that language is not limited, particularly for the duty to defend. Exclusionary language must be narrowly construed. And under Illinois law, when Illinois courts have looked at exclusions with similar arising of or arising from language, they have found that they only negate the duty to defend if all of the alleged damage or injury could not have occurred but for the excluded substance or the excluded conduct. And that is clearly not the case here. The Campbell complaint alleged that property damage occurred from iron and sediment that was separate and independent from the alleged bodily injury from lead. It also alleged waterborne illnesses and odors from bacteria that are, again, separate and independent from the alleged bodily injury from lead. And what this means is that the plaintiffs could have prevailed on the property damage claims and the bacteria claims, but not on the bodily injury claims based on lead exposure. And that's why the lead exclusion did not negate Liberty's duty to defend. And again, the Netherlands Insurance Company case is directly on point here. The allegations in that case were that lead and copper in the water allegedly injured the people who drank it. The court found that the lead exclusion in that case did not negate the insurer's duty to defend. The court found that, quote, there are allegations of potential injury from copper that are not dependent on lead injury nor stem from lead injury. Copper is potentially a separate and distinct cause of injury, unquote. The court also found that it couldn't be determined from the face of the complaint whether or to what extent any person had been injured by lead as opposed to copper. And therefore, the lead exclusion there did not negate the insurer's duty to defend. So the Netherlands Insurance case and the other lead exclusion cases that we cited in our briefs, they stand for the proposition that where an underlying complaint alleges damage and injuries from lead and other substances, a court cannot determine whether the alleged harm arose out of or arose from lead based solely on the complaint for purposes of the duty to defend. And the same thing is true of the Campbell complaint. Campbell complaint alleges several different types of injuries. Another way to view it is that the Campbell complaint or the Campbell lawsuit, the essence of that is the alleged neglect of the water mains by the city. This allegedly caused various injuries. Only one of them is exposure to lead. Sorry about that. Only one of the alleged injuries is exposure to lead. Now, the negligence is covered and only some of the injuries at most would be excluded. The other injuries and damage and the suit as a whole did not arise from lead and the lead exclusion did not negate Liberty's duty to defend. So it would have made a difference. Mr. Walker Bright had the water been contaminated prior. It could have depending on how it was contaminated. But yes, that's if the if the groundwater had been contaminated and was was traditional environmental pollution before it got into the water system, then under the village of Crestwood cases. That's the holding of the cases in the village of Crestwood. You take traditional environmental pollution. You give it to your residents. That's excluded by the police exclusion. But when you take a substance and the substance is inside the water pipes themselves, and they only get into the water once it's in the water pipes, it comes from the containment system itself. That is not traditional environmental pollution. No, it isn't. So is it excluded. It is not excluded because pollution exclusion only exclude traditional environmental pollution. And so if we look at the trial court's finding that there was a potential occurrence alleged, the focus there is on whether the insured expected or intended the injury, not whether the acts were performed intentionally. And courts have observed, for example, the first district in Dom's case said that it should be the rare case where the court is so confident that the allegations could not possibly be considered to describe negligent conduct that the court can say that the allegations don't even potentially allege an occurrence. Courts have also consistently found that the alleged failure to protect people from exposure to harmful substances, even when they are intentionally admitted as part of the insured's normal business operation, that is an occurrence where the insured is alleged to have negligently caused injuries and damage. The Campbell lawsuit was like those cases. It alleged the negligent failure to protect people from exposure to harmful substances. It was not one of the rare cases. The rare cases are cases such as arson or sexual molestation or intentional assaults, things that cannot credibly be characterized in any way other than an intent to harm. That's not the Campbell case. The Campbell complaint alleged negligence and intent in separate counts in the alternative. Now the city's alleged decision to defer maintenance, that's the act that caused the alleged injuries and damage. It may have been an intentional decision, maybe not, but that's irrelevant. The question is whether the injury or damage was expected or intended. And not only does the complaint allege that the city acted negligently, it actually alleges facts that show the city's lack of intent. For example, it alleges that the city took steps to prevent harmful substances from entering the water, the chlorine and the orthophosphate treatment. So that is a type of – the complaint alleges that there was a – it can't be credibly characterized, let's say, as negligence. And in fact, that's what the complaint – that's what the plaintiff alleged was negligence. Now Liberty puts a lot of stock into the cases that have found that the natural and ordinary consequences of an insured act is not an occurrence based on the particular facts of those cases. But we have to look at what those cases are really saying. First off, the natural and ordinary consequences language is not some separate or different test from the expected or intended injury test that the Illinois Supreme Court has found applies. And Liberty, in fact, admitted this in its response brief on page 11 when it wrote, injuries reasonably anticipated by the insured are not covered. The second thing to point out is that the cases that Liberty cited can be grouped into two main categories. The first category is where the insured allegedly provided defective work or a defective product, and then it had to repair or replace that work or that product. And courts have found that repairing or replacing defective work is an economic loss. That's a business risk, and businesses should reasonably anticipate having to repair or replace their own defective work because insurance policies, liability insurance policies, are not performance bonds. But those same courts recognize that faulty work that damages other property or injures people is an occurrence. That damage or injury is not necessarily foreseeable in the same way that fixing the insured's own work is. And the Campbell complaint, of course, alleges that the city injured residents and damaged their property. That is at least a potential occurrence. The second type of case is where the insured clearly acted with intent to harm, which we've already talked about, the rare cases. And that is not what the Campbell case is about. So, for those reasons, your honors, the city respectfully requests that this court reverse the trial court's grant of judgment, entry of judgment in favor of Liberty. Find that Liberty had a duty to defend the city in the Campbell case and enter judgment on count two of the city's counterclaim. Thank you. Justice Kennedy, any questions? I think that was a no. He's mute. Justice Shostak, any questions? I have none. Counsel, then, when you're ready. Good morning, your honors. Again, that's for the police. May it please the court. Just one point of contention with Mr. Walker Bright's setting of the landscape of the case. When my clients denied coverage, there were multiple bases upon which the denial was framed, including the fact that my client's policies didn't incept until 2018. And we're talking about the deterioration, degradation of a hundred-year-old water system. And even the plaintiffs in the case alleged that their harms at the latest began in 2016. What we chose to do, however, is file at the pleading stage a motion for judgment on the pleadings on the three issues that are before the court today. So it's not correct to say that these were the only three issues upon which the Liberty companies based their denial. And to the extent that we have a disagreement and your honors are not inclined to affirm Judge Waller's opinion, the real correct disposition at that point would be to remand the matter back to Judge Waller. So I just want to make that clear at the outset from the standpoint of what Liberty based its denial on. With regard to the pollution exclusion, I think it's worth underscoring at the outset that... Just real quickly while we're on that issue, you relied on Scottsdale, but Scottsdale was a summary judgment versus judgment on the pleadings, correct? We do. That is correct. But at this point, and I can get into the basis for our reliance on Scott, but really the two Crestwood cases, there's a Seventh Circuit case, a Judge Posner opinion, and then there's a First District case. Those are the only two cases in this jurisdiction that address what is going on here, and that is alleged water contamination through a city water main system. And does it or does it not constitute traditional environmental pollution? And in both of those cases, independently reasoned by the First District and the Seventh Circuit, the court analyzed the traditional environmental pollution issue. And in both cases determined that in fact, the contamination spreading through hundreds of miles of city under subsurface city water main system and dispersed to literally thousands of property. This isn't a one dwelling kind of case. This is thousands of property owners and businesses in both Crestwood and Sycamore. Mr. Walker Bright focuses a lot on the fact that in the Sycamore case, the water contamination was alleged to have occurred within these crumbling and degrading hundred year old water main pipes. And tries to make a distinction between that fact and the Crestwood cases in which the contamination was alleged to have occurred in an outside water well that was then pumped through the system. But both courts, First District and Judge Posner analyzed that situation. And Judge Posner in the Scottsdale opinion came to the conclusion verbatim that the source of the contamination, where it originated, was irrelevant. The language of the exclusion focuses on the method of dispersal. The fact that the injuries alleged would have not occurred but for the discharge dispersal migration of the contaminants. That is what both courts focus. So in other words, the water was not contaminated prior. It's your position prior to going through the pipes. Well, there are some allegations about some corrosive soils, you know, degrading the pipes and you know it's hot, it's, it's, you know, one could could read the complaint that to suggest that there are some outside elements that contribute to the contamination, but, you know, I would, I would agree that the contaminants are the primary source of the contaminants were actually the degrading metallic substances including lead in the, in the pipes, but the point I'm trying to make and the point I think that that Mr. Walker, this is, is that the language of the exclusion does not as both courts notice, notice, notice, the First District and Judge Poser in the Seventh Circuit, the source of the contamination isn't the focus. It's the method. It's the fact that the contamination was discharged dispersed migrating. That's the but for cause the injuries would not have occurred, but for those contaminants traveling miles and miles through the subsurface water main to literally thousands allegedly thousands of residents, this is not a case. Like the almost all of the cases Mr Walker bright sites that that discussed traditional environmental contamination or pollution within the context of a single dwelling, or, or all components originating within the dwelling. This is, you know, we're talking about miles and miles of water pipes. So, a quick question on that you're equating discharge into the environment with dispersals through the pipe system. I think both courts. Let me ask the answer that in two ways both both courts, again, the only two courts in this jurisdiction that have analyzed this issue within the context of the very fact pattern here municipal water main systems. Both courts analyze that issue and both courts concluded that the, the, the travel of the traveling the disbursement through those systems, miles and miles constitute a traditional environmental pollution. Yep. The other thing I would note that Mr. Walker bright makes a big point of the, in fact, calls the cynical known of the definition of traditional environmental pollution that pollution must occur in the land atmosphere or any water course or body of water that's discussed in the columns case and some of the project. What's the definition of for example water course. If your honors look at the dictionary definition of water course of water course, according to Webster's is a natural or artificial channel to which water flows. American Heritage dictionary, a natural or artificial channel of flowing water. So, I would submit to you your honors that, you know, under a reasonable conception of what a water courses under these definitions miles hundreds of miles of sea water main metallic city water mains would cut would constitute a water course. And unless Mr. Walker bright is going to argue that no one from sycamore waters their lawns or washes their cars, or that no buildings in sycamore catch fire. Then it does this allegedly contaminated water does get into the, the environment. Well, that's not alleged counsel, right, the harm alleged is what's inside the house. So, my, my other question is concerning claims outside of traditional pollutants so they talked about lead, but there are other claims besides lead the iron, for example, breaking down. What's your position on their argument that that because it's, there may be a claim that is not excluded that the duty to defend still applies. Well, I think, in that case, one with regard to the lead exclusion I think the issue turns on the arising from language and the exclusion and one anyone who reads the camel complaint and we've shown and have a few exhibits that that are in the record that demonstrate how pervasive the lead allegations were in the camel complaint. They're all over the complaint there are there are there are allegations that one in which every home or practically every home tested and sycamore showed elevated quantities of lead alleged sites for this point do not involve the arising from language, which we have, you know, demonstrated is entitled to a broad view. So in our view, the, the, the Campbell complaint sycamore plate is a suit arising from lead, but more to the point, Judge Waller when he analyzed this issue, and we, I would submit your honors to do the same. Discuss the lead exclusion, along with the pollution exclusion so if we're talking about content no one in this case, by the way, disputes that every element contaminant, that is alleged to be occurring in sycamore is not. No one's alleging that they would not call those candidates would not qualify as a pollutant under the policies. So my point is, and I think if you look at Waller's opinion, those exclusions as as your honors know the policy has to be construed as a whole, those exclusions together, I would submit separately, but also together can can be can be read to exclude all the contaminants that are alleged, even those not not lead based. So what about the bacteria so if bacteria winds up being the, the causation is, is that a pollutant under the, the policy. Yes, it is, and no one disputes that it isn't. There are also bacteria exclusions in the policy, but, but I think the point I'm trying to make is separately, or together with the pollution exclusion. All the contaminants that are alleged in the, in the sycamore plate or complain are covered, or I mean are excluded but covered by the definition pollutants in the policy. So this this distinction in this attempt to kind of pivot to from one contaminant to another is really a distinction that is not dispositive here because read together with all the exclusions in the policy. All the basis are covered with regard to what's being alleged. So your position is that there's no claim under this complaint that could succeed without being covered by an exclusion. No, yes, that's that is our being excluded. Yeah, yeah, yeah, the exclusions refer to all claims property damage or bodily injury in relation. And again, I think, together with the lead exclusion if your honors are inclined to agree with Judge that and that the lead exclusion on its own wouldn't wouldn't exclude the entire claim, and certainly the pollution exclusion, along with the lead exclusion would know that the courts are supposed to construe liability in favor of the insured correct. I don't think that's the correct standard. In favor of coverage. Well, I guess I'm not understanding what you mean by construe liability in favor, we look at coverage favor of coverage as opposed to in favor of not covering. Well, I think, I mean a lot of these insurance policies are very broad and what they're going to exclude. So the courts say that they should be construed in favor of coverage as opposed to against coverage. Well, I would probably not phrase it like that because I think if you phrase it like that. You know that the logical extension of that is there be no claim that wouldn't be covered. Not true, not true. I'm just saying, you know, when you're, you're, you're very close call and you're, you're kind of going back and forth. Should we construe in favor and that's what the courts say you construe it in favor of coverage as opposed to coverage. Well, I think, think about think about the public policy argument behind a council, you're paying your insurance every month, and you're paying and you're paying and then all of a sudden, everything like you just said to Justice Kennedy, there's nothing in here that would not invoke the exclusion. Well, I guess what I guess it's not really a question you stand, you can answer but especially when I say that I think the standard is you're, you need to determine whether there's a defense obligation, which is what it's issued here, you look at the complaint and you look at the policy language and you determine whether there's a potential for coverage. What I'm saying here and I want to be clear. I'm not saying that all liability, you know, however construed could not be covered by these policies. I'm saying that what's alleged in the Campbell complaint, where there is no dispute in this case that all the contaminants that are alleged in that case are pollutants. I just want to be clear about that. Okay, we're under that landscape, the combination of the pollution exclusion analytics. If you're not inclined to independently rule that they both exclude covered independently together would certainly exclude what is being alleged in the campaign complaint, Council, following up on that line of inquiry, can you name anything flowing through the pipes of sycamore that would be covered. Based on based on what's alleged in the, in the Campbell complaint. I mean, obviously, the water, free from, you know, the contaminants that are alleged to be in it. No, here's the question. Can you name a substance that is not considered to be a pollutant such to invoke the exclusion. I mean, what could possibly be flowing through those waters, other than, you know, bottled water, that would not have minerals fluoride, things that are that are added to the water for the public benefit. But pollutants don't say, with all due respect, sir, that the definition of pollutant doesn't say, if it's a solid liquid gaseous or etc. That is good for people. So it doesn't seem that that you really your exclusion is so broad that it encompasses everything other than hydrogen and oxygen which make up water. But, again, what I am addressing here is what is alleged in the complaint. A hypothetical that, you know, I would actually I would, you know, need to. But here, my point is that if we are to construe these policies in favor of finding that there is coverage and duty to defend. I look at these exclusions and say, I can't find anything. Looking at this, that would be that would not invoke that would not invoke your exclusions. What would be the scenario upon which you would need to make that determination your honor that the scenario that that we are all facing is what is a complaint that were that was filed. So, under a situation where somebody decided to file a complaint because there's fluoride and water. You know that that's probably not something that that just if you want a hypothetical that's probably not something that that that would be covered or that that people would agree is a polluted here and again I underscore wait a second. Hold on a second. It's not what people agree to it's what the definitions are fluoride clearly would fall as a pollutant under your definitions. I'm not sure what is it an irritant. Is it a contaminant. Is it something that's harmful to a person. I don't know. Council if I can just interrupt briefly paragraph 10 for example of the complaint alleges that iron water reacts with chlorine allowing the bacteria to flourish right so iron is contained in the water that under your definition the iron, which is a naturally occurring mineral. The iron would qualify as a pollutant. Well, Your Honor, I don't think anybody is arguing that, you know, water that has some some healthy element of iron content is a pollutant I don't think that's what's being argued in this case what's being argued in this case is that is that the iron and other metals degrading in these pipes are reacting with lead based components soldering and other pipe fittings, and the lead is leaching into the, into the water I don't I don't think that anybody is arguing that. I don't think anybody's alleging that, that there's, you know, iron, excessive. I mean paragraph 10 says that the iron reacts with the chlorine but paragraph eight is the same thing deterioration doesn't mention lead. It's just the iron, the iron is what's causing the discoloration of the water and the damage to the fixtures and, you know, washing machine sinks, whatever. Well, actually I think if I'm looking at 10, what's being alleged in 10 is that the iron reacts with other elements in the water, and it allows bacteria, so I mean that the bacteria excessive bacteria is what what's being alleged in this paragraph to be the blue. So, so then go to paragraph eight, the iron particulate enters the home staining tubs dishes personal items, negatively impacting taste and appearance. So, I mean, your duty, the duty to defend applies, really, to any potential claim any claim that potentially is coming right and at this stage we're just looking at the complaint to determine does any allegation potentially evade the exclusions. Right. And so right now I mean I'm just seeing that iron is alleged, whether it has merit or not it is alleged to be the cause of the harm. So how is iron pollutants. Well, in this particular paragraph. It's, you know, it's not, I mean what when I say iron. You know, this is alleging an excessive amount of iron. And it's also alleging much more than, you know, than, than just me there's detail in here that That You know, clearly indicates that there's excessive amounts of contaminants in the water that you know contribute to certain things being discolored and property damage occurring again. They're really, you'll see in the briefing and certainly below there, there has been no dispute in this case that what is all the contamination that's being alleged in the Campbell complaint would qualify as a pollutant under the policies that's that's not really the issue that that anybody that issue that anybody has been disputing in this case that really the issue is, is what is what alleged and the method of dispersal and migration through the, through the system, and into the taps of thousands of people does that constitute environmental traditional environmental pollution and, and frankly, the only two courts in this jurisdiction that have considered that issue have determined that it does. Now, I'm not sure how much time I have. Your time is up but if you would like to give us your closing thought that would be fine. Well, I, you know, I also like to talk a little bit about the occurrence issue in the, that we have pointed out this is a, an issue that your honors would need to get to. If, if you affirm Judge Waller on the two exclusions, but what's what's being alleged in the complaint. Isn't that there was any act or or maintenance that want to ride and caused, you know, that these degradation and pipes what's what's being alleged is that the city elected not to maintain pipes from 100 year old pipes for decades. You know, a homeowner that decides to not repair or or maintain is its roof cannot sue its insurance company or claim that under some under no coverage when the roof degrades. So under no circumstances regardless of what seeps into that the land out of those pipes. The fault was of the sycamore for not maintaining the pipes that's basically your position, correct. Well, my position is that when, when, when, when a city elects not to maintain hundred year old pipes for decades, when those pipes degrade and crumble which is what's being alleged, that is a force that is a rational and probable result from that. Right, I think we get it. I think we get it. I think, yeah, and I don't want to belabor it again, but I didn't want to make that point that that is a separate, that is that is sycamores burden, and that is a separate basis for for denial of coverage. All right, Council, thank you for your argument. Justice Kennedy any additional questions. No. Justice Shasta. No. Council, thank you very much for your argument. Council when you're ready. Thank you, Your Honors, Mr. Walker bright, why don't you pick up right where he left off. Would it matter what's going into the flowing in. As a result of the fact that those pipes were in such horrible disrepair. How do you respond to that argument. Well, on the occurrence issue, what I would point out is that the Illinois Supreme Court, a long time ago in 1952 found that there is no time and origin limitation on the word accidents and insurance policies. And the liberty policy definition of occurrence is not only an accident, but also it says it includes continuous or repeated exposure to substantially the same general harmful conditions. That clearly includes things that happen over a considerable period of time. So the idea that this could be that because it was going on for some period of time. Because the city deferred maintenance for some period of time, but that takes it outside the realm of an occurrence is just incorrect, both under the law and under liberty zone policy language. Discussion that the court had with counsel about the whether what goes into the pipes and versus what comes out of the pipes and whether that's an occurrence. Again, the issue is not whether the city deferred maintenance intentionally for an occurrence. The issue is whether the city expected or intended the injury. I mean, an analogy here that might be helpful is let's say someone has a car. It's a 10 year old car. It's got 10 year old brakes. And that car has literally been around the block a few times. And you know that it's going to require some maintenance. You're going to need to get it checked out, get the brakes checked out, everything like that. But you need that car to travel to and from work every day and maybe you don't have the cash to take it in and get it checked out right away. So you decide to defer maintenance on the car. Keep driving it for some time. And let's say that person gets into an accident and causes the accident because they're not able to stop in time because the brakes are not as good as they should be. According to Liberty, driving around in an old car is what the natural and ordinary consequences of driving around in an old car is that you get into an accident and that that therefore is not an occurrence. That's not the standard for determining an occurrence. No reasonable insured would think that they were not covered for that type of situation. It's the injuries and damage that has to be expected or intended. The Campbell complaint does not allege that, at least not in every count. There are a couple of counts that allege intent to injure, but there are the counts 3, 4, and 5 that do not allege intent to injure. In fact, they allege negligence. And they base their class. They say that one of the common questions of fact and law is whether the city negligently maintained its water pipes. That is a potential occurrence. But I just want to address, going back to the pollution exclusion, council indicated, said that a water course, the city water pipes could be a water course. First thing to point out is Liberty has never argued that at any point before today that the water pipes are a water course. That is a brand new argument that Liberty has come up with today. The second thing to point out is that in our... I'm sorry, can you just repeat what you said, the argument they came up with today. Say that again. Liberty never argued below or in its briefs in this court that the water pipes are a water course. They have never argued that. It's not in their complaint. It's not in their briefs below. It's not in the briefs here. So that argument is a day late and a dollar short. The second thing is that footnote three of our opening brief, we noted that under Illinois law, a water course is a fixed determinant course along which surface water flows. And we cited 36 Illinois law and practice waters section 14. So council's argument without any case law, without any support, that now the city water mains are somehow a water course is just not going to cut it. On the lead exclusion, the council said that none of the other cases involve a rising out of language. That's not true. In the Netherlands insurance case, the lead exclusion stated that it excluded bodily injury arising in whole or in part, either directly or indirectly out of the inhalation, ingestion, absorption, use, or existence of exposure to or contact with lead or lead contained in goods, products, or materials. So that's some pretty broad language in there, which the court nevertheless found did not negate the duty to defend because there were allegations of lead and other substances, copper in particular. And the other thing to point out is the council mentioned that there are bacteria exclusions in the policies. Well, those exclusions have an express exception for water that is supplied by the city, which is clearly the case here, and which is why Liberty did not raise those exclusions either in its judgment on the pleadings or in response to our judgment on the pleadings. And lastly, council said that there would be other issues to resolve in the event the court reverses the trial court's judgment. The parties cross-moved for judgment on the pleadings, and there was no arguments made by Liberty other than the lead exclusion, the pollution exclusion, and the occurrence issue. And we cross-moved on those issues, and Liberty did not raise any other exclusions or any other language in their policy as reasons not to grant the city's motion. So I think that leaves us pretty clearly in the position of reversing the trial court and granting count two of the city's counterclaim if the court decides to go that direction. One question, council. I wanted to address council's argument that the delivery of the water through the pipes is the discharge. So why is that not a discharge? And even just extend that to the dispersal of the water into the washing machines and dishwashers of the home or the sprinkler system outside, why is that not a discharge into the environment? Well, the Illinois Supreme Court has held that the interior space of a building is not part of the environment. In the Wilkin insulation case, that involved asbestos fibers discharged into a building. And the court said the inside of the building, because it was air, was not atmosphere. And in the Stringfield case from the First District, which is a court case that Liberty cited, that involved lead discharged inside of homes from lead paint. And the court said that is not traditional environmental pollution. And in the PQ Corporation case, that was again an inside case involving inside of a building. So the Illinois courts are clear that the discharge, dispersal, release, escape, or whatever you want to call it, of a pollutant solely inside of a building is not traditional environmental pollution. Except in this village of Crestwood cases, where you took what was already traditional environmental pollution, the contaminated groundwater, and you take it and you put it inside people's homes. That doesn't alter the character of it as traditional environmental pollution. That was the argument that the village tried to make. They said, well, we didn't put the PCE in the water. We just took the water and we put it inside people's homes and we gave it to people. And they said the pollution exclusion shouldn't apply. So when the courts were talking about how the origin of the contamination doesn't matter, what they meant is, and what was the issue there was, did the fact that the village didn't originate the contamination, did that matter? And the court said it does not, because the pollution exclusion doesn't say that. But that's not this case. I mean, as an analogy here, if the city decided to take the water, groundwater, and let's say it wanted to get into the bottled water business, and it bottles up the water in plastic bottles, and it sells it under the name Sycamore Springs, and then chemicals from the bottles leach into the water, and people who drink it get sick. No one would think, I mean, even if they, maybe they use the bottled water in their homes, maybe they water their plants with it, or they do whatever with it inside of homes, and it's discharged into the homes. No one would think, no reasonable insured would think that that is traditional environmental pollution. That's a defective product case. And that's what the Campbell complaint is alleging. They took the water, and they put it inside a container, the pipes, the container contaminated the water, and then it was given to the residents. That is not traditional environmental pollution. And the only other case that deals with that exact fact pattern is the Netherlands insurance case. And it found the pollution exclusion did not apply. Justice Kennedy, any follow up question? No, thank you. Justice Shostak, any further questions? Thank you, gentlemen. All right, gentlemen, we thank you for your arguments, and we will issue a decision in due course. Thank you, Your Honor. I believe Council's on mute there. You're on mute Council, we can't hear you. We still can't hear you. There's no sir rebuttal anyway, so. Councilor Sitzer, your, your microphone is muted, you would have to turn it on for us to be able to hear you. He says it's on. Definitely is not on. Can you hear me now. Yes, yes. I'm sorry, Your Honor. I just want to make a couple of points because some of the council. Council with all due respect, you are not entitled to a sir rebuttal I'll give you two minutes, make your points. I'm quoting with regard to justice Kennedy's question I'm quoting from with regard to the source of the contamination I'm quoting from Judge Posers opinion in Scottsdale on page 720, the exclusion that with regard to the pollution exclusion is a liability for was, was, was, was examined by the Seventh Circuit was examined by the first district, and they concluded that the harms were traditional environmental pollution. With regard to the point, I would, I would not go on Council, you aren't entitled to sir rebuttal with all due respect justice Jorgensen I, I, we would need to give Mr. Walker right an opportunity and I don't think we have that time. Okay, I'm sorry he was permitted some additional time I thought I might be granted the same but I won't, if it's problematic I won't, I won't do it. Gentlemen, thank you both for your arguments, we will issue a decision in due course. Thank you. Thank you.